Good morning. May it please the court, counsel. I represent AAA Bonding Company, and we're here on an appeal from Judge Ellison's court, and we have several grounds on which we're appealing summary judgment rulings by Judge Ellison. Fifth Circuit has already heard parts of this case twice, and as a way of background for what I think is relevant for today, I want to give just a little beginning history or discussion of how these bonds work, because I think it's relevant to the issues that we're about to talk about. AAA Bonding, as an agent of Safety National, can only execute or be involved in the posting of immigration bonds, in this case delivery bonds, only with a power of attorney from Safety National. Safety National is the principal obligor on these bonds. AAA Bonding is not authorized as a matter of law to post these bonds on its own. So how do you construe the prior opinion about the notice and demand and all that? Correct. Give me a way to harmonize the prior opinion with what you're saying now. I will. So in the prior opinion, the court did not in any way alter the terms of the that when there is notice to both checked on the box, that the government must send notice to both, and if it fails to, then enforcement of that notice can only be against the party or the party receiving the notice. It didn't address the issues that we're talking about today. And the reason that that's important is because assuming, and we'll get to the argument that this is an expired form and the effect of that, but assuming that this is a valid contract and knowing that AAA cannot post these bonds on itself because it would wreak havoc with the system, these agents do not on their own have the capability financially to necessarily support breaches when they get to a certain degree if they're particularly large. The government recognizes that. It makes perfect sense. That is why when you look at the form, which is the third joint appendix, page 5082, you see that the initial obligor is safety national, and the most key is at the top left-hand corner is the power number. When all notices are sent, they refer to the power number. The reason for that is to be able to post a bond individually, an entity must be able to satisfy one of two requirements. And in the record on 5855, you'll see the instructions. And what's important is you either have to post a cash bond equal to the amount of the delivery bond, or you have to be on the treasury listing. Because the whole point is the government wouldn't do business with these agents standing alone. The agents pay a premium to the insurance company for the insurance that if they're unable to pay, then the government's really remedy is to go against the power. And in fact, in this case, and it's in the record from I think we've started in our brief, what happened is, is treasury brought a proceeding because of the perceived delinquency in these bonds against safety national, not against AAA. They wanted safety national to pay. Because it's very clear that you cannot execute a bond or post a bond unless you satisfy one of these two requirements, neither of which AAA had to do. We didn't put up cash to secure the bond. And we did not in any way have a T listing. Let me get to the end and work backwards. Yes, sir. You've got a settlement. Yes. And the settlement involved the government and Homeland Security and safety. Correct. All right. And what all we hear about is whether AAA gets credit for that settlement. Is that not right? Half right. Okay. Well, correct me. We have two arguments. One argument is that we believe that because the settlement without any allocation as to which bonds were being resolved. And it's our position that as a result, AAA should be dismissed from this case, that we get the benefit of that. And does that turn on whether it's several or joint and several? I would say it does not. And the reason it doesn't, I think both are important, but I do not think that it does because here's why. You then open the case, which the case law indicates and everybody agreed on the case law. Even Judge Ellison cited to, um, in the matter of Texas, uh, general petroleum is if in fact, as we have here, there's no allocation as to which bonds were settled, but merely the fact that all go after AAA. Now the other argument is, all right, if that's not the case, then what it, then who bears what burden? Well, our position is as the case law indicates, we fit squarely in point. We were not a party to the settlement. We're not a party to the negotiations. We're not a signatory to the settlement. And all we know is that safety national, after I might add, spending nearly eight years as a joint plaintiff, essentially acknowledging that they bore the principal responsibility on these bonds. The next thing you know, my joint plaintiff enters into a settlement with the government for quote, all the bonds and safety and safety national is out of the case. To me, all the DHS reserve rights against AAA. Let's talk about that. Unless, unless AAA was a joint obligor. So just struck me that that was the shortest route home for you is to say that you're a joint obligor. And so the no rights are reserved. I'm not denying we're a joint obligor. I'm saying we could not have been sued separately. If you look at the bond, the AAA representative signed in two places. He signed in the position of the obligor and then he signed in the signature of agent slash co obligor. If any, our position is we could not be individually responsible for the bond because we would never have been allowed to would have been responsible potentially for all of these bonds, whether judgment was found against AAA or found against safety. Well, why didn't, why didn't a more simple argument to say you're a joint obligor. And so under the settlement agreement, uh, uh, DHS reserve no rights against you. Well, we're not, we're not denying that in the context of the situation, the way it works, that we are joint obligors. My point is, is that as joint obligors, the principal obligor is always going to be safety by virtue of the fact they're the only ones that could post a bond and we were acting on their behalf. We did sign on the bond. Okay. But if you're a joint obligor, we're done. That's correct. And I agree with you. Okay. So I don't understand what, what, why that makes a big difference. Yeah. Well, because, because the government disagrees with that approach as did judge Ellison, the, they're taking the position that they didn't need to allocate. We're not covered by the settlement regardless of what the case law says. But by virtue of their contract, which we were in a party to, they shift the burden to us to have to litigate the very same bond that have been settled. We're, as we know, that's why my argument is we either, for the reasons you're stating, are released. Their contract between them can not affect our rights. Well, you know, you can settle with one joint obligor ordinarily and reserve rights against another. But what did they reserve on? Because the, the entire list of bonds, the entire list of bonds were attached to their agreement as having been settled. As against, as against Safety National, but not against you. And the question is as to which bonds. Because we raised the argument that Judge Ellison said we neither, we neither are released nor get a credit. Right. I mean, that's the problem with that. If you settle with a joint obligor, then you get, then the other joint, the non-settling party gets a credit. And so they're, they're in kind of a cute way to try to have it both ways. And the question is will they succeed in that? That, that's exactly right. And I, it, it, it doesn't seem complicated because when you look at the language of who can post a bond, you look under what authority we posted the bond, we speak for safety. I mean, the way they wrote the settlement, if AAA is a bond, if they're purely several, then their argument would be there's no credit because it's, I settle my debt with the Bank of America and Judge Davis settles his debt with the Bank of America. There's nothing, we don't, you know, we don't care about each, each other. Do you know what that debt is? Here, it's the very same debt that they're pursuing us on. Because they didn't separate it out. It, it, it, they're trying, but without us being a party to that agreement, they're trying to shift the case law that says, because we can be potentially responsible, at least under Judge Ellison's thoughts, if we're not joint obligors, then we could be responsible. And because their contract says we have to prove on which ones, that's not what the case says. There's an opportunity for double recovery because we don't know what their theory was. We don't know what the allocation was. So now I have to litigate the very same bonds, even those that I am 100% jointly liable on, which case I should be released, or upon which even they say, if I should happen to prove that some of them are joint, then safety's paid already, so I'm out. That, I mean. I mean, they're playing high stakes poker here, as far as I'm concerned, and they're just relying on, on the way they phrase the settlement, carrying the day, and leaving you holding the bag, because they're saying they, those bonds weren't settled, because they weren't liable on them, because they didn't receive notice, and therefore, under the prior case, you're not on the board. That's their argument, and they, they sort of, they're all in on that, as far as I can tell. That's right, Judge, and here's the problem with that. Safety is no longer a party to the case. Am I litigating for everybody now? In other words, if I litigate for myself to try to get safety involved, to either prove the same, or prove something else, they're out of the case. That's why you, that's why you allocate. That's why the case law says that. They cannot contract around the case law and put the burden on me by just leaving it as it says in the agreement. Well, if some court should happen to determine that these are really joint bonds, then I guess we'll live with that. That's what the language says. No, no. I mean, they, they set it up this way. I mean, I think they're happy with the settlement they got, and they're hoping for more, and, because there's no way you would settle it like this as the Department of Homeland Security if you really believed that you were leaving you guys out there. I mean, they're hoping that they are, and maybe, and maybe we will affirm the judge on that, and, and they'll, they'll be successful in that pursuit, but I think it's a very risky strategy if you don't know going in that it's risky. It is, and, and, and the problem is to say, or to imply that Drew was involved in negotiating and the settlement, of course, not in evidence, but, but regardless, it seems to me that they're in a position to, yes, they're taking a chance, but even to imply that somehow they think they had got, they had a good settlement. I mean, obviously they did what they wanted to do. Their reasoning, I don't know, but just remember, even judgments against, this is why, you're right, Judge Davis, that we're, we're, we're joint, because even a judgment, in light of the Fifth Circuit's prior ruling, even a judgment based upon the way the contract is, we act as an agent for safety on all fronts. We sign in both places, and what that means is you could settle with safety every day of the week, you could make a deal with safety, but you have their power of attorney on the hook, and their T-listing on the hook, if there's judgments against us. Okay, I think we have your argument. You have a red light. Thank you very much, sir. Yes, sir. Okay, Mr. Drew. Let me, let me just ask you initially why AAA is not a joint obligor here. Absolutely, Your Honor. AAA is not a joint obligor because of this Court's prior decision. This Court held that DHS can only enforce a bond against an obligor that receives notice. DHS has one tool, and one tool only, to enforce a breach bond, and that's to hold an obligor financially liable. There is no way to reconcile this Court's past decision with the position that AAA and safety are joint and severally liable on all bonds, no matter which party gets liable. Well, why can't you read it as saying, for enforcement purposes, you can only recover on a, against a joint obligor if you give him notice. You know, you can't, you can't recover on the other joint obligor without giving him notice. Well, I mean, if you can't recover against a, an obligor, he no longer has any joint and sever liability. His liability is gone, and safety has no liability for any bonds for which he did not receive notice, including all 23 bonds before this Court. I mean, the question of whether something's enforceable and what a contract means are two different things. I mean, the statute of limitations could have run, and I'm still a joint obligor under the contract, it's just you're not going to be able to recover against me because the statute of limitations ran. So here, if you didn't give me notice, you can't recover against me, it doesn't change my status vis-a-vis Judge Davis on this joint obligation. I mean, that's, that's the argument they're making, whether we accept it or not. I don't find it ridiculous. Well, Your Honor, it's, it's, you know, they turn the joint and sever liability provisions of the bond on their head. Those provisions are in there to protect the government. They have, there's a surety obligor in there to protect the government. And there's also liability for the agent to protect the government. And the reason you have both parties liable is precisely so that if you can't collect against one, you can collect against the other. But aren't you, that's great when you're trying to collect. But now what you're trying to do is have your cake and eat it, too. You're trying to settle for what you want and also get a lottery ticket with it and hope to recover more from AAA. I mean, that's the problem is then you're trying to use it as sort of a sword rather than a shield. Your Honor, the, the settlement agreement has no effect whatsoever on the bonds we're seeking to collect against AAA. Before the settlement, only AAA was liable for those bonds for which only it received notice. The settlement has no effect. We would be in the same position with the bonds before this Court whether we had settled the safety or not. We'd be only be able to go against AAA, and that's it. So the settlement had no effect whatsoever. It's not that we're, you know, trying to have our cake and eat it, too. It's that we settled safety's liability, which were for bonds where either safety only was liable or were noticed. That's the only bonds we could go against safety for. So we settled safety for those bonds. What's left? The bonds for which AAA only is liable. And the settlement was constructed so that it has no effect on those. We reserved our rights to continue to go against AAA for those bonds for which only AAA is liable. But if, if, if they're joint albigors, then, then under the settlement agreement, you, you can't recover from it. But this Court severed joint and several liability whenever one party did not receive notice. It reconciled the position with, with the notice position in the bond, in the bond, which is also part of the contract. And so for that notice provision to have effect, there has to be sole liability when one, one party, when only one party gets a notice. But, I mean, that then sort of benefits you for the failure of notice. I mean, my read of that prior opinion is sort of against you. I mean, you lost in that if you didn't give notice to somebody, you couldn't recover against them. Now you're turning that around and saying, we, the government, now get to kind of pick who we want to hold liable by the way we send notice. And that wasn't how that was, I mean, if that was, if that is the result of that opinion, that's an unintended consequence, because that's not where it's coming from. But, Your Honor, there were six bonds before the Court that presented the exact same facts that are before the Court now. There were AAA received notice and safety did not. On the other hand, AAA was solely liable for these bonds and AAA paid them. And that was the law of the case until the briefing for the summary judgment, which AAA now, you know, contested what the meaning of this Court's decision was that every party had accepted, every party had accepted sole liability. And so it's not a case that the government can pick and choose. But, see, the problem is that, as I said, normally if you have a joint obligation and you settle with Defendant A, Defendant B gets a credit. You have tried to work it out, so Defendant B gets neither a credit nor a benefit from your settlement on a joint obligation. And I don't see that in the prior case. I don't see that being the mandate of the prior case. AAA got, did get a benefit and got something better than a credit from the settlement agreement. Before the credit agreement, we could have gone after AAA for the joint and several bonds that were left, those bonds which both parties received notice. Instead, we gave AAA a release for those bonds. A settlement credit could only apply if there was a bond for which both obligors were liable, the settling party and the non-settling party, and there was a risk of a double or excess payment. We took that off the table by giving a release for the joint and several liability bonds. Instead, all that is left is the sole liability bonds, bonds for which only AAA is liable. That's all that's left, and that's all we're seeking on the 23 bonds before the court. So it's not the case that we somehow harmed AAA with this settlement agreement. We benefited AAA with this settlement. I think you are kind of commingling the concepts of liability and enforceability, and I'm not. I'm seeing that the contract might make both of us liable, but for some reason, you may only be able to sue me. Maybe Judge Davis is in bankruptcy. Maybe limitations has run. Maybe you can't get jurisdiction over him, and I see that as different from saying that I'm the only one liable on an obligation. That would mean I'm the only one that signed it. But, Your Honor, under the bond, enforceability and liability for DHS are the same thing. We have no other way to enforce the bond after a breach but to hold the party liable for life. So enforceability is liability for the bond. We have no other mechanism of enforcement. Okay, I understand that. But what I'm saying is, when you're looking at it from your perspective, who can you sue, I understand what you're saying. But when you're looking at it from the perspective of AAA, what benefit did they get? What is their status vis-a-vis the settling party? I don't see how you can alter their status by the way you give notice. Their status is either they're a joint obligor or they're a several obligor. Well, to be clear, Your Honor, all these bonds were breached well before the settlement agreement. It's not that these bonds before the court, DHS chose to give notice to AAA saying, oh, because the Fifth Circuit's decision, we can go after just AAA now. All these, you know, the notice, whether it was given or not, happened before the settlement agreement. So it's not like we were— I know. I'm just saying the settlement agreement was drafted in a very cute fashion, and it may be successful. It's a strategic choice that y'all made. And if I were you, I would have advised the client, whoever that is, when you're talking about the government, that hey, this is high-stakes poker, and we may—it may pay off, it may not. We may only get what we got out of safety because this may not work. And it may work. And so I'm not faulting you for trying this strategy. I'm just questioning whether it is a successful strategy. I mean, the only—the alternative strategy would be to have just drafted—say we reserve all our claims against safety. I mean, we reserve all our claims against AAA. We settle all our claims against safety. Say nothing about the joint and several liability bonds. AAA would be in a worse position if we had done that, because we could go after AAA not only for the sole liability bonds, but for the joint and several liability bonds. And then they would get a credit, and we would be litigating the credit. That's the way that would work. And they would get a credit for the— And maybe that's a good place for them to be. Maybe it's not. They would get a credit for the joint and several liability bonds. They would have no basis for a credit for bonds for which only they had liability. There is no basis in the sole liability debts. Let me—I mean, if you just look at this bond, do you have any argument that AAA and national safety are not joint obligors? If both parties have received notice— Just look at the contract. Sure. Are they joint obligors under the contract? Under the contract, they are, if both parties receive notice. This Court— So you can—like Judge Haynes was saying, you can change their status under the contract by just giving one party notice. That's basically your argument. If the government wanted to somehow limit its financial recovery by only having one party to go against, it could take that sort of irrational step, I guess. I can't imagine a situation where the agency would find it valuable to only have one pot of money to go against. Well, whether you intended to do that or not, it seems to me that's the result that you're joint obligors, but because of the way the notice was given, suddenly the result under the contract is transformed and they're no longer joint obligors. That was this Court's holding in 2011. Okay. So your argument's based strictly on your interpretation of that first opinion. That decision has structured everything since. It's the basis of our settlement of safety and it was the basis of an alternative dispute resolution procedure we had with AAA and safety where we reviewed bonds each month and assigned and said it's either AAA alone, safety alone or both, and the parties would give defenses. So the 2011 decision governed this proceeding until the summary judgment briefing where a vastly different interpretation was started by AAA. Okay. I think we have that argument. Do you have anything else to add? Just briefly on the Paperwork Reduction Act, Your Honor. The Paperwork Reduction Act only bars penalties for failing to provide information on forms that do not display a current OMB control number. Here, DHS is not seeking to collect a penalty for failing to provide information. It's seeking to collect the amount due on bonds that AAA freely entered into and breached. AAA has no support in any instance of a court finding that the Paperwork Reduction Act allows a party to enter into a contract, breach a contract, and then escape all responsibility. On the invoice issue, DHS sent the 23 invoices for these bonds to AAA. AAA's bare assertion of non-receipt does not rebut the uncontradicted evidence that DHS sent the notice, including DHS' record of the invoices and the sworn statement about DHS' procedure to send the notices to both safety and AAA. AAA has not provided any grounds to avoid pay on these debts, and this, of course, is usually going to be affirmed. Thank you very much. Okay, thank you, Mr. Drew. Okay, Mr. Magan, now I'm back to you, sir. I don't want to be quickly on the settlement, and I know it's clear now it's just a matter of the court making a decision. I do find it interesting when they say, when they talk about pots of money, when they let a $1 billion company off the hook and say that they could have gone after either one of us, which I just don't think that that's what the Fifth Circuit had intended. They require the power number. I mean, the prior case was about whether notice to one was notice to both. That's correct. And they said, no, it's not, and that was really all it was. That's right. That's right. We're the agent. We signed as an agent, and we acted on behalf of safety at all times in every capacity, period. I mean, I don't know where that gets you. You signed on the dotted line as a co-obligor, too. Right, but they are the principal obligor. We speak for them. I understand what you're saying, but that's why we're joint, because we acted on their behalf at all times. You acted on your own behalf, too, once you signed on as a co-obligor. Right, but we're joint obligors, and that's why they attached all of the bonds to the settlement. I mean, that's the way it operated until there was a settlement, and discussions about ADR and what discussions are in context of settlement are not in front of the court, so that's not relevant. So I think, I mean, I just think it's clear, and I think Judge Haynes is right. They're all in, and the court will just have to decide its interpretation, but the notion that we get neither a credit nor a release without there having been an allocation, I mean, it just, it defies Fifth Circuit precedent. With regard to the OMB, the definitions of the term penalty are very, very broad. Both, first of all, both the government, in their response brief, and Judge Ellison both acknowledge that Federal Paperwork Reduction Act does apply in principle, that these bonds were in fact on expired forms. There's no dispute. It's stipulated by the court and by the government. Mr. Drew says they're only trying to enforce penalties. Well... He's saying they're not trying to enforce penalties. Well, but they are, because there's penalties of interest attached, and one of the problems with why they don't want to lose the notices, and I'll point out that there's conflicting affidavits, and the case law says that you can refute the presumption of the, you know, under the mailbox rule, which we believe that we had with our affidavit. We also know that their affidavit was a lot more general, and it said what their procedures should be and what they intend to do, but the case law also said that you need something more to establish... I was just talking about, his argument is that the effect of the expired thing is they can't collect penalties, and not that they can't collect on the bond. That's his argument, as I understand it. They are including penalties of interest. Okay. So, that, in fact, the penalties... He's conceded that, then. Yeah, the penalties and interest, I agree with you. The penalties and interest, whether you remove the invoices, because summary judgment was not proper for being granted, they would have to re-invoice, in which case penalties of interest would have to start over. That's the point here. It would be the same thing if that's the only application of the Reduction Act, and you're right. He has just acknowledged that. The problem is, when you look at the whole point is that what's clear is you can raise it at any time, it's undisputed, and everyone admits it's on an expired form, and then the government is unable to pursue any other action, other than in the context of criminal prosecution, or, of course, paying your taxes, that's the exception to the rule. Other than that, it's to have the courts and the government follow the rule, or there are significant penalties, which is unenforceability, of which it's undisputed that either penalties of interest shouldn't apply, if that's their only argument. At worst for us, and at best, the form is unenforceable. Thank you very much. Appreciate it. Look forward to your decision.